ADAMS, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| OCEAN INNOVATIONS, INC., et al., | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CASE NO. 1:03CV0913 |
| vs. | ) | |
| | ) | MEMORANDUM OF OPINION |
| | ) | AND ORDER |
| QUARTERBERTH, INC, et al., | ) | [RESOLVING DOC. 155] |
| | ) | |
| Defendants. | ) | |

This action is before the Court upon plaintiffs' Motion to Clarify Memorandum of Opinion and *Markman* Order (Doc. 155), filed on May 17, 2005. The Court has reviewed the memorandum in support, memorandum in opposition (Doc. 156),[1] and reply memorandum (Doc. 157). Plaintiffs move the Court to clarify its Memorandum of Opinion and *Markman* Order (Doc. 107) to indicate that its finding that the terms "first group of floatation units" and "second group of floatation units" mean "tall" and "short" floatation units does not apply to claim 1 of the '833 patent[2] or claim 1 of the '113 patent.[3] For good cause shown, the motion will be granted.

---

[1] Quarterberth, Inc. ("Quarterberth"), James Alexander ("Alexander"), and Noel W. Lott, Jr. aka Bill Lott ("Lott") joined in this memorandum. In 2006, voluntary petitions for relief in cases under Title 11 of the United States Code were filed by Quarterberth and Alexander in the United States Bankruptcy Court for the Middle District of Florida, Tampa Division, being Case Nos. 8:06-bk-05293 and 8:06-bk-05292, respectively. On October 13, 2006, this Court entered a Judgment Entry Perpetually Staying Further Proceedings Against Quarterberth and Alexander (Doc. 162). Today, this Court entered a Memorandum of Opinion and Order (Doc. 236) that severed plaintiffs' claims against Lott and dismissed them without prejudice for improper venue.

[2] U.S. Patent No. 5,682,833.

[3] U.S. Patent No. 5,931,113. The '113 patent is called the "Beam Patent."

The *Markman* Order, entered on December 7, 2004, provides in relevant part:

**B. First group (set) of float (flotation) units
Second group (set) of float (flotation) units**
   The parties dispute the meaning of these terms which appear in claim 14 of the '013 patent and claim 1 of both the '833 patent and '113 patent. . . . Plaintiffs maintain that these terms mean "a number of individual flotation units assembled together." Doc. 79 at 11. The Court finds that these terms refer to type; and adopts the defendants' proposed construction. "First group (set) of float (flotation) units" means the tall flotation units and the "second group (set) of float (flotation) units" are the short flotation units. *See* Doc. 82 at 11.

*Id.* at 9-10. The relevant portion of claim 14 of the '013 patent[4] reads as follows:

a *first group of the float units* having bottom surfaces located substantially as far below the pivotable connection as their top surfaces are above the pivotable connection whereby they can rotate downward to the same extent that they can rotate upward before the respective facing side walls come into contact with each other,

a *second group of float units* having bottom surfaces located substantially closer to the pivotable connection whereby they can rotate downward substantially without limitation, (Emphasis added.)

Claim 1 of the '833 patent reads in pertinent part as follows:

selecting a plurality of floatation units from a *first group of floatation units* having a first buoyancy and a *second group* having a second buoyancy, the *second group* being less buoyant than the *first group*, so that the selected units have a total buoyancy sufficient to support the craft with its lowermost portion out of the water, (Emphasis added.)

Claim 1 of the '113 patent reads as follows:

A floating dock assembly for a watercraft, the assembly comprising:

a *first group of floatation units* connected to each other to form a dock surface to support the watercraft above the surface of the water, the dock surface having a longitudinal axis extending fore and aft of the watercraft and a transverse axis extending abeam of the watercraft when the watercraft is on the dock surface; and

a beam coupled to and positioned under the *first group of floatation units*, the beam extending in the direction of the transverse axis of the dock surface, the beam comprising a *second group of floatation units* coupled together to support the *first group of floatation*

---

[4]U.S. Patent No. 5,529,013.

> *units*, thereby providing lift and reducing bowing and flexion of the dock assembly when the watercraft is on the dock surface. (Emphasis added.)

Plaintiffs assert that the *Markman* Order, as it stands, arguably could suggest that this Court meant to indicate that its construction applies to *any* claim that contains the "first" and "second" group language, including claim 1 of the '833 patent and claim 1 of the '113 patent. According to the plaintiffs, any such suggestion in the *Markman* Order "obviously is a typographical mistake." Doc. 155 at 3. Plaintiffs contend that the issue is whether a "first" group of units must *necessarily* be tall when the claim calls for the group of units each to have a "first," greater buoyancy (claim 1 of the '833 patent) than a "second" group or when the claim defines a group's characteristics by their position in the dock (claim 1 of the '113 patent). Doc. 157 at 2.

Plaintiffs argue that claim 1 of the '833 patent covers groups of floatation units having different *buoyancies* as opposed to different size attributes. Furthermore, the specifications of the '833 and '113 patents give no explicit definition of "group," and claim 1 of the '833 patent sets forth all that is required to define the characteristics of the groups: one group has greater buoyancy than the other.

Claim 1 of the '113 patent also defines the dock using the words "first group" and "second group." Plaintiffs contend that the typographical error in the *Markman* Order is readily seen:

> The "first group" constitutes the entire upper layer of the dock, the entire dock except the beam. The beam is the "second group," which under the Court's construction must be short units. However, it is perfectly evident that the beam, which is claimed as comprising the "second group," is shown in the figures as assembled entirely from tall floatation units. The Court's claim construction is thus at odds with the disclosed, preferred embodiment. . . . To define the "second group" as being of any particular height is inconsistent with the preferred embodiment and clearly incorrect. Further, the use of "group" to refer sometimes to units of a particular height (as in '013 claim 1), sometimes to units of particular

>buoyancies (as in '833 claim 1) and sometimes to units of particular positions (as in '113 claim 1) demonstrates that the terms were used broadly and should not be given narrow definitions.

Doc. 155 at 4-5.

Defendants oppose the motion for two reasons. Defendants main basis for opposing the motion is that it is "extremely untimely" (Doc. 156 at 2)--it was filed over five months after the Court entered the *Markman* Order. Second, the summary judgment briefing was completed on March 15, 2005--over two months prior to the submission of the within motion. "Based upon, and in reliance, o[n] the Court's construction defendants prepared and submitted memoranda claiming not only are plaintiffs' patents invalid but defendants regardless do not infringe on these patents. These arguments were structured around the Court's claim construction." Doc. 156 at 3.

Defendants correctly state that "[b]oth [parties] relied on the Court's *Markman* Order" in the summary judgment briefing. Doc. 156 at 2. But they do not point to a single specific argument they made in the briefing that would be different under the requested corrections. Rather, they merely state "[t]o allow a change in the Court's construction renders a good portion of the prior submissions of the parties' moot." *Id.* at 2. Moreover, "[i]f this Order were to be modified, defendants' arguments may need to be modified as well." *Id.* at 4. Finally, the defendants acknowledge that while the '113 patent is a subject of plaintiffs' pending Motion for Partial Summary Judgment on the Issue of Patent Infringement (Doc. 111), claim 1 of the '833 patent is not. *Id.* at 3-4. Because the *Markman* Order may have implications for future litigation,

Plaintiffs' Motion to Clarify Memorandum of Opinion and *Markman* Order (Doc. 155) is GRANTED. The Court vacates its prior finding that the terms "first group of floatation units"

4

and "second group of floatation units" in claim 1 of the '833 patent mean "tall" and "short" floatation units. The Court finds that those terms refer to groups of floatation units with different buoyancies.

The Court also vacates its prior finding that the terms "first group of floatation units" and "second group of floatation units" in claim 1 of the '113 patent mean "tall" and "short" floatation units. The Court finds the term "first group of floatation units" means those units that form the dock surface as described in the claim and the term "second group of floatation units" means those floatation units that form the beam.

IT IS SO ORDERED.

| | |
|---|---|
| _March 31, 2009_ | _/s/ John R. Adams_ |
| Date | John R. Adams |
| | U.S. District Judge |