ADAMS, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| OCEAN INNOVATIONS, INC., et al., | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CASE NO. 1:03CV0913 |
| vs. | ) | |
| | ) | MEMORANDUM OF OPINION |
| | ) | AND ORDER |
| QUARTERBERTH, INC, et al., | ) | [RESOLVING DOCS. 115 and 116] |
| | ) | |
| Defendants. | ) | |

This action is before the Court upon plaintiffs' Motion for Partial Summary Judgment on the Issue of Patent Validity (Doc. 115). The Court has reviewed the memorandum in support, memorandum in opposition (Doc. 135), and reply memorandum (Doc. 152).

This action is also before the Court upon defendants' Motion for Summary Judgment on the Issue of Patent Validity (Doc. 116).[1] The Court has reviewed the memorandum in support, memorandum in opposition (Doc. 137), and reply memorandum (Doc. 154).

Plaintiffs Ocean Innovations, Inc. and Jet Dock Systems, Inc. brought this action alleging that the defendants have infringed U.S. Patent No. 5,529,013 ("the '013 patent"); U.S. Patent No. 5,682,833 ("the '833 patent"); U.S. Patent No. 5,947,050 ("the '050 patent"); U.S. Patent No.

---

[1] Quarterberth, Inc. ("Quarterberth"), James Alexander ("Alexander"), and Noel W. Lott, Jr. aka Bill Lott ("Lott") joined in this motion as well as the memorandum in opposition to plaintiffs' motion (Doc. 135). In 2006, voluntary petitions for relief in cases under Title 11 of the United States Code were filed by Quarterberth and Alexander in the United States Bankruptcy Court for the Middle District of Florida, Tampa Division, being Case Nos. 8:06-bk-05293 and 8:06-bk-05292, respectively. On October 13, 2006, this Court entered a Judgment Entry Perpetually Staying Further Proceedings Against Quarterberth and Alexander (Doc. 162). On March 31, 2009, this Court entered a Memorandum of Opinion and Order (Doc. 236) that severed plaintiffs' claims against Lott and dismissed them without prejudice for improper venue.

6,431,106 ("the '106 patent"); and U.S. Patent No. 5,931,113 ("the '113 patent")[2] in violation of 35 U.S.C. § 271(a). Of the 83 claims of the patents in suit, only claims 1 and 15 of the '013 patent[3] and claim 28 of the '113 patent[4] are the subject of plaintiffs' pending Motion for Partial

---

[2] Collectively, the '013, '833, '050 and '106 patents are called the "Drive-on Patents" and the '113 patent is called the "Beam Patent." The Drive-on Patents share a common specification. The effective filing dates of the applications for the '013 patent and the '113 patent are July 11, 1995 and September 12, 1997, respectively.

[3]
> 1. A floating dock assembly for a watercraft, said assembly comprising a plurality of floatation units connected to each other to form a base and a pair of arms extending from the base; the units of the base being joined to each other for limited relative movement so as to form a substantially rigid structure, and flexible connections between at least some of the units of each arm, the flexible connections between the units permitting each unit to pivot upward with respect to its immediately adjoining unit to a first limited extent and downward with respect to the same adjoining unit to a substantially greater extent.
>              * * *
> 15. A floating dock assembly for a watercraft, said assembly comprising a plurality of floatation units connected to each other to form a bow end portion, and a pair of arms extending from the bow end portion, the units of the bow end portion and the arms having top surfaces that are substantially coplanar to define a deck lying approximately in a plane, and floatation units connected between the arms having top surfaces below the plane of the deck to receive and guide a water craft being driven onto the dock and wherein the floatation units are generally square in plan view and have fasteners at their corners for connecting them to between one and three adjacent floatation units, some of the floatation units being tall units and having a first height, and some of the units being short units and having a second, shorter height, the floatation units connected between the arms being short units.

[4]
> 28. A floating, drive-on dock formed from a plurality of floatation units each with a generally flat top surface, the floatation units being connected together so that their top surfaces are generally coplanar and horizontal, and each floatation unit having at least one side wall which faces an opposing side wall on an adjacent floatation unit,
>    each floatation unit having a pivotable connection to the adjacent floatation unit, the connections being above the water line when the dock is floating freely and a fixed distance below the top surface of the floatation unit and enabling adjacent floatation units to rotate with respect to each other until the respective facing side walls come into contact with each other,
>    a first group of the floatation units having bottom surfaces located substantially as far below the pivotable connection as their top surfaces are above the pivotable connection whereby they can rotate downward to the same extent they can rotate upward before the respective facing side walls come into contact with each other,
>    a second group of floatation units having bottom surfaces located

(continued...)

Summary Judgment on the Issue of Patent Infringement (Doc. 111).[5] Therefore, the Court will hold in abeyance ruling on the sufficiency of the defendants' validity challenges to the other claim limitations of the patents in suit that the plaintiffs do not assert in their motion regarding infringement.[6]

Only defendant ERA Marine Products, Inc. ("ERA Marine") has asserted an invalidity defense and counterclaim. *See* Amended Answer, Affirmative Defenses and Counterclaims (Doc. 31) at Third Affirmative Defense and Count II of the Counterclaims.[7] Defendants, however, argue that each of the plaintiffs' patents is invalid because the claims contained in them

---

[4](...continued)
    substantially closer to the pivotable connection whereby they can rotate downward substantially without limitation,
  said floating dock having a pair of parallel arms formed at least in part of floatation units from said second group of floatation units, and
  a bridging unit between said parallel arms, said bridging unit having a top surface which is above the water surface when the dock is floating freely; and
  a beam coupled to and positioned under the plurality of floatation units and positioned transverse to a longitudinal length of the dock, wherein the beam provides support to the plurality of floatation units, thereby reducing bowing and flexion when substantial forces are exerted, such as by large size watercraft, on the dock.

[5]Defendants did not set forth any invalidity contentions regarding claim 15 of the '013 patent and claim 28 of the '113 patent. *See* Defendants' Preliminary Invalidity Contentions and Amended Preliminary Invalidity Contentions (Plaintiffs' Appendix of Exhibits (Doc. 119) at Exhibits 2-3). Therefore, they concede the validity these claims.

[6]Plaintiffs note that the validity of the following claims are not challenged by the defendants in Doc. 135: claims 7, 11, and 14 of the '013 patent; claims 5-7 of the '833 patent; claims 2 and 6-8 of the '050 patent; claims 6-8 of the '106 patent; and claims 2-36 of the '113 patent. *See* Doc. 152 at 3.

[7]ERA Marine and George Dabrowski are the only defendants that have filed answers in the case at bar. *See* Docs. 22, 23, and 31. None of the defendants to date have plead against the Second Amended and Supplemental Complaint (Doc. 209), filed on November 11, 2008.

were in the prior art.[8] Even if a patent has been issued by the Patent and Trademark Office ("PTO"), it may be challenged as invalid if it was obvious in light of the prior art, 35 U.S.C. § 103, or if it was anticipated by the prior art, 35 U.S.C. § 102. According to the defendants, those claims broadly defining plaintiffs' invention were actually invented by others and, in fact, were utilized by others well before plaintiffs' claimed invention.

## **THE SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriately granted when

> . . . the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). *See also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005).

The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial." *Guarino v. Brookfield Tp. Trustees*, 980 F.2d 399, 403 (6th Cir. 1992). Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute. Under

---

[8]"Prior Art" means "Knowledge that is publicly known, used by others, or available on the date of invention to a person of ordinary skill in an art, including what would be obvious from that knowledge. Prior art includes (1) information in applications for previously patented inventions; (2) information that was published more than one year before a patent application is filed; and (3) information in other patent applications and inventor's certificates filed more than a year before the application is filed." BLACK'S LAW DICTIONARY (8th ed. 2004).

Fed. R. Civ. P. 56(e)(2),

> . . . an opposing party may not rely merely on allegations or denials in its own pleading; rather, it's response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial.

The non-moving party must, in order to defeat the motion, "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403. In reviewing the motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943-44 (6th Cir. 1990).

The United States Supreme Court, in deciding *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), stated that in order for a motion for summary judgment to be granted, there must be no genuine issue of material fact. *Id.* at 248. A fact is "material" only if its resolution will affect the outcome of the lawsuit. In determining whether a factual issue is "genuine" the Court must decide whether the evidence is such that reasonable jurors could find that the non-moving party is entitled to a verdict. *Id.* To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990). The existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily will not be sufficient to defeat a motion for summary judgment. *Id.*

## **ANALYSIS**

"[I]n rendering a decision on a motion for summary judgment, a court must 'view the evidence presented through the prism of the substantive evidentiary burden' that would inhere at trial." *Monarch Knitting Machinery Corp. v. Sulzer Morat GmbH*, 139 F.3d 877, 880-81 (Fed. Cir. 1998) (quoting *Anderson*, 477 U.S. at 254). Because patents are presumed valid under 35 U.S.C. § 282, the defendants bear a heavy burden of proving the patents are invalid. "To overcome [the] presumption of validity, the party challenging a patent must prove facts supporting a determination of invalidity by clear and convincing evidence." *Schumer v. Laboratory Computer Systems, Inc.*, 308 F.3d 1304, 1315 (Fed. Cir. 2002). Furthermore, the clear and convincing evidence standard applies at this summary judgment stage. *Id.*

> It is not . . . the task of the district court, to attempt to interpret confusing or general testimony to determine whether a case of invalidity has been made out, particularly at the summary judgment stage. Indeed, to accept confusing or generalized testimony as evidence of invalidity is improper. The risk is great that the confusion or generality is the result, not of an inarticulate witness or complex subject matter, but of a witness who is unable to provide the essential testimony.

*Id.* at 1316.

The requirements for disclosing invalidity contentions in this case were established by the Court in the Case Management Plan ("CMP") (Doc. 28). The Court adopted for the purposes of discovery scheduling and patent-related briefing in this case the Local Rules of Practice for Patent Cases before the United States District Court for the Northern District of California, effective January 1, 2001 ("Patent L. R."). *See* Doc. 28 at 3, No. 7. Patent L. R. 3-3(b) requires that the party opposing patent infringement identify "[w]hether each item of prior art anticipates

6

each asserted claim or renders it obvious." Patent L. R. 3-3(b). The only contentions that the defendants communicated prior to the September 12, 2003 deadline[9] are those submitted in Doc. 119 at Exhibits 2-3.[10] In those contentions, the defendants made only limited assertions about certain alleged prior art of docks purportedly invalidating certain claims. They also did not provide "[a] chart identifying where specifically in each alleged item of prior art each element of each asserted claim is found," pursuant to Patent L. R. 3-3(c). Patent L. R. 3-3(c) required the defendants to cite specifically within the prior art reference, not merely to the entire document or some general element therein. *See* Doc. 28 at 3, No. 7(b). Furthermore, they failed to specifically identify each motivation to combine prior art references as required by Patent L. R. 3-3(b). With the exception of the Declaration of Eric Maydell (Doc. 116-16), the various attachments to Doc. 116 listed by the defendants as invalidating references were not previously enumerated in Doc. 119 at Exhibit 3. Therefore, under Patent L. R. 3-6, they are not cognizable at this time.

Defendants conduct a cursory analysis of the allegedly invalidating prior art and make the conclusory assertion for the first time in their Motion for Summary Judgment on the Issue of Patent Validity that a number of alleged prior art docks invalidate "each and every claim" of every one of the five patents in suit. Doc. 116 at 13. Defendants' suggestion runs counter to the Court's clear instruction that invalidity contentions be charted on a claim-by-claim and element-by-element basis.

---

[9]*See* Order (Doc. 49) at No. 2.

[10]Defendants did not file Final Invalidity Contentions as would have been permitted by Patent L. R. 3-6 and 3-7, and have not sought leave to amend their contentions.

7

**Anticipation**

To prove anticipation under 35 U.S.C. § 102, the defendants must show that each claim limitation is met in a single prior art reference, and on summary judgment must do so with admissible evidence that would be clear and convincing at trial. *Sandt Technology Ltd. v. Resco Metal and Plastics Corp.*, 264 F.3d 1344, 1350 (Fed. Cir. 2001). "Typically, testimony concerning anticipation must be testimony from one skilled in the art and must identify each claim element, state the witnesses' interpretation of the claim element, and explain in detail how each claim element is disclosed in the prior art reference. The testimony is insufficient if it is merely conclusory." *Schumer*, 308 F.3d at 1315-16.

Defendants contend that independent claim 1 of the '013 patent and the claims building on it "are definitely contained in the prior art." Doc. 154 at 7. The Maydell Declaration (Doc. 116-16) describes a dock comprised of numerous floatation units which flex with respect to each other. Exhibit 2 to Doc. 116-16, at 6 is a photograph of a combination dock which was taken at Sea World of California in the summer of 1992. Defendants contend that the Sea World dock invalidates claim 1 of the '013 patent. However, as Judge Oliver found, "the Sea World device did not contain arms, . . . but instead was a solid ramp without a craft-receiving surface." *Ocean Innovations, Inc. v. Archer*, No. 5:98CV1515, 2004 WL 5042296, at *12 (N.D.Ohio June 16, 2004), *rev'd on other grounds*, 145 Fed.Appx. 366 (Fed.Cir. 2005). Because "arms" are an express limitation of this claim, the Court finds the Sea World device does not anticipate this claim. Furthermore, the Sea World dock does not have differential flexing, *i.e.*, "the flexible connections between the units permitting each unit [of an arm] to pivot upward with respect to its immediately adjoining unit to a first limited extent and downward with respect to the same adjoining unit to a substantially greater extent."

8

In May 1993, Richard Mendelman offered the Quigley dock (Doc. 116-17)[11] for sale. *See* Mendelman Deposition (Doc. 148) at 153-54. Of all the different docks presented to the Court that the defendants maintain demonstrate plaintiffs' claimed invention is found within the prior art, defendants argue the Quigley dock is most illustrative of the invalidity of the '013 patent. According to the defendants, the Quigley dock contains all of the claims of the '013 patent. Doc. 116 at 15 and Doc. 154 at 8.

The Court will disregard the Quigley drawing sheet because it was not previously disclosed as an allegedly invalidating event. *See 02 Micro Intern. Ltd. v. Monolithic Power Systems, Inc.*, 467 F.3d 1355, 1366 (Fed.Cir. 2006) ("we see nothing in the Federal Rules that is inconsistent with local rules requiring the early disclosure of infringement and invalidity contentions and requiring amendments to contentions to be filed with diligence"). If the Court were to consider the Quigley dock, it would agree with the plaintiffs that none of the drawings in Doc. 116-17, including the drawing on the far left side, depict differential relative pivoting movement under claim 1 of the '013 patent or claim 28 of the '113 patent or tall and short units combined in arms as required by claim 15 of the '013 patent. Furthermore, none of the drawings have the support beam claimed in claim 28 of the '113 patent. *See* Doc. 137 at 14; Declaration of W. Allan Eva III (Doc. 137-2) at 5, ¶ 13.

The Adorni dock (Doc. 116-8) is also claimed to anticipate.[12] In March 1990, Mr. Mendelman offered to sell the Adorni dock to Harvey Jackson. The drawing of this dock is dated March 14, 1990. *See* Doc. 148 at 142, 146-48. According to the defendants, it "incorporated both tall and short floatation units." Doc. 116 at 6. The Court finds that the

---

[11]One of the several docks depicted in the drawing sheet. Defendants, however, do not specify which dock they contend anticipates, in violation of the Patent L. R.

[12]Exhibit B to the letter, dated June 21, 2000, from Donald E. Zinn, Esq. Doc. 119 at Exhibit S.

9

drawing of the Adorni dock had no arms, base, or guiding unit between parallel arms, per claims 1 and 15 of the '013 patent and claim 28 of the '113 patent. It also had no support beam as required by claim 28 of the '113 patent. *See* Doc. 137 at 14; Doc. 137-2 at 5, ¶ 12. It was merely an idea that Mr. Mendelman envisioned for use as a platform on which people could stand and lift rowing shells out of the water by hand. Doc. 148 at 54-56.

**Obviousness**

The Court next considers whether the '013 and '113 patents are invalid as obvious in light of the prior art. A patent may not issue "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a); *see also generally KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007). Obviousness under 35 U.S.C. § 103 is a question of law, with underlying factual considerations regarding (1) the scope and content of the prior art, (2) the differences between the prior art and the claimed invention, (3) the level of ordinary skill in the art, and (4) any relevant secondary considerations guiding the inquiry. *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966).

Defendants argue in loose, broad language that "[t]he entirety of the prior art certainly demonstrates multiple instances of a teaching, suggestion or reason to combine the various references. . . . [a]s such, the plaintiffs' claimed invention is obvious and therefore invalid." Doc. 116 at 14. In particular, the defendants contend that claim 15 of the '013 patent is invalid due to its obviousness. Doc. 154 at 7. According to the defendants, "[o]ne only need look at the various docks created by Mr. Mendelman to show that he, who is definitely skilled in the art,

10

certainly had the motivation to modify the prior art to cover the claimed invention in Claim 15." *Id.*

The Court finds the defendants have not shown with facts supported by clear and convincing evidence that one of ordinary skill in the art would have found in the prior art some teaching, suggestion or incentive to combine the prior art references as the plaintiffs did in their invention. *Emerson Elec. Co. v. Spartan Tool, LLC*, 223 F.Supp.2d 856, 911-12 (N.D. Ohio 2002). Mr. Mendelman's admission at his deposition confirms the absence of any teaching or suggestion to practice the plaintiffs' invention. He testified:

> Q  Did you ever consider using tall and small Jet Floats together for drive-on docking purposes?
> A  Me?
> Q  Yes, sir, you.
>    Did you ever consider that?
> A  When you said did I ever consider it, I'm sure after I saw the Jet Dock display, I would consider it, too.

Doc. 148 at 104-105.

When Charles Smalldridge sold to Sea World the dock referenced in the Maydell Declaration (Doc. 116-16 at ¶ 6) , Mr. Smalldridge advised Sea World to bring the top surfaces of the cubes of its dock under the water using a line or bar.

> A.  . . . I so instructed Pete in Sea World to not attach to these units and to lower them down in the water.
> Q.  How was he to lower them down into the water?
> A.  He was to lower them down by the -- the actual gravity would bring them down to the water, but I sketched a unit out and showed him how to attach a line or a bar or whatever he wanted to use to make sure that the lip of the unit was below the water so that, when the jet skiers hit it, it would . . . .

Smalldridge Deposition (Doc. 142) at 142-43. Rather than a teaching or suggestion to practice the plaintiffs' invention, Mr. Smalldridge was teaching or directing *away* from a dock that used a

guiding unit between the arms "above the water," as covered in claim 28 of the '113 patent. Doc. 137-2 at 6-7, ¶ 16.

Defendants contend that claims 1 and 15 of the '013 patent would have been obvious to the ordinary skilled person at the relevant time in light of the drive-on work dock created in 1983 by Robert Whitford for the Los Angeles pre-Olympic qualifying trials at Lake Casitas, California.[13] They offer the declaration (Doc. 116-4) and deposition testimony (Doc. 141) of Mr. Whitford in support of this contention. His testimony, however, is corroborated neither by any contemporaneous records nor by the testimony of anyone else.

Defendants admit "[i]t is true that an inventor's testimony alone cannot satisfy the requirement of showing clear and convincing evidence of invalidity." Doc. 154 at 5. The Court finds defendants' purported evidence of this "prior art" is uncorroborated and therefore legally insufficient to invalidate the patents in suit. *Hilgraeve, Inc. v. Symantec Corp.*, 271 F.Supp.2d 964, 973-74 (E.D. Mich. 2003) (conclusory statement by inventor of alleged prior art software, that he had personal knowledge of date of shipping of software to customers, was not admissible on patentee's motion for summary judgment that software was not prior art which could render patent invalid as obvious, absent corroborating evidence).

Without independent corroboration, oral testimony or documents of Mr. Whitford alone cannot meet the clear and convincing evidence standard. As the Federal Circuit has warned:

> "It is well established that when a party seeks to prove conception via the oral testimony of a putative inventor, the party must proffer evidence corroborating that testimony." *Shu-Hui Chen v. Bouchard*, 347 F.3d 1299, 1309 (Fed.Cir. 2003). The inventor "must provide independent corroborating evidence in addition to his own statements and documents." *Hahn v. Wong*, 892 F.2d 1028, 1032 (Fed.Cir. 1989).

---

[13]Like the Sea World dock, the dock at Lake Casitas does not have differential flexing as required by the language of claim 1 of the of the '013 patent

*Proctor & Gamble Co. v. Teva Pharmaceuticals USA, Inc.*, --- F.3d ---, Nos. 2008-1404, 2008-1405, 2008-1406, 2009 WL 1313321, at *7 (Fed.Cir. May 13, 2009).

> That rule addresses the concern that a party claiming inventorship might be tempted to describe his actions in an unjustifiably self-serving manner in order to obtain a patent or to maintain an existing patent. . . . Evidence of the inventive facts must not rest alone on the testimony of the inventor himself.

*Singh v. Brake*, 317 F.3d 1334, 1340-41 (Fed. Cir. 2003) (internal citations omitted).  "To establish an actual reduction to practice, an inventor must provide independent corroborating evidence in addition to his or her own statements and documents, such as testimony of a witness other than the inventor or evidence of surrounding facts and circumstances independent of information received from the inventor."  *Markman v. Lehman*, 987 F.Supp. 25, 30 (D.D.C. 1997), *aff'd*, 178 F.3d 1306 (Table), No. 98-1207, 1998 WL 807786 (Fed. Cir. 1998).

Having reviewed the defendants sundry contentions, the Court finds for the reasons set forth at pages 17 to 20 of Doc. 137 that the differences between the prior art and the various claim limitations of the patents in suit are numerous and significant.  Moreover, none of the prior art references shows a dock with floatation units arranged so that they can bend more in one direction and in another as required, in one form or another, by claims 1 and 15 of the '013 patent and claim 28 of the '113 patent.  None of the art, including the Adorni dock, shows a beam under a dock to stiffen it as required by claim 28 of the '113 patent.  None of the prior art, including the drive-on work dock created Mr. Whitmore, shows a bridging unit between two arms to keep them parallel as required by claims 1 and 15 of the '013 patent.  There simply was nothing obvious about combining the many elements that the plaintiffs did, in the manner that they did, to achieve drive-on dry docking as the plaintiffs did.

13

With regard to the third factor identified in *Graham*, *supra*, *i.e.*, level of ordinary skill in the art, the defendants assert:

> A person of ordinary skill in the art would be someone who has at least five years in the dock business. This is a sufficient period of time to become familiar with the different size flotation units available and the different methods by which to construct floating docks. It also provides a sufficient period of time in which to become acquainted with different problems and scenarios encountered by purchasers of floating docks.

Doc. 116 at 12. Defendants, however, cite no evidence that supports these assertions. According to the plaintiffs, the level of ordinary skill in the drive-on docking industry "has been and remains minimal, with Jet Dock being the most sophisticated practitioner." Doc. 137-2 at ¶ 8.

The final factor in the *Graham* analysis requires the Court to take into account "secondary considerations." *See Graham*, 383 U.S. at 17-18; *Honeywell Intern. Inc. v. U.S.*, 81 Fed.Cl. 514, 563-64 (Fed.Cl. 2008). Defendants argue that once there has been a *prima facie* case of obviousness, the plaintiffs can rebut it with objective indicia of nonobviousness. Doc. 116 at 14; *see Alza Corp. v. Mylan Laboratories, Inc.*, 464 F.3d 1286, 1293 (Fed.Cir. 2006) (concluding that the appellee "had established a strong prima facie case of obviousness, which [appellant] had failed to rebut through secondary considerations").

> It is jurisprudentially inappropriate to disregard any relevant evidence on any issue in any case, patent cases included. Thus evidence rising out of the so-called "secondary considerations" must always when present be considered en route to a determination of obviousness. Indeed, evidence of secondary considerations may often be the most probative and cogent evidence in the record. It may often establish that an invention appearing to have been obvious in light of the prior art was not. . . . Enroute to a conclusion on obviousness, a court must not stop until all pieces of evidence on that issue have been fully considered and each has been given its appropriate weight. Along the way, some pieces will weigh more heavily than others, but decision should be held in abeyance, and doubt maintained, until all the evidence has had its say.

14

*Emerson Elec. Co.*, 223 F.Supp.2d at 913 (quoting *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538-39 (Fed.Cir. 1983) (citations omitted)).

"Objective evidence of non-obviousness may include commercial success, a long-felt but unresolved need, failure of others to find a solution to the problem at hand, copying, praise of the invention, departure from expert-accepted principles and widespread recognition." *Emerson Elec. Co.*, 223 F.Supp.2d at 913 (citations omitted); *see also Markman*, 987 F.Supp. at 42-43.

The Court finds the so-called "secondary considerations" related to obviousness support a finding of non-obviousness. They confirm the PTO's conclusion that there was nothing obvious about the invention claimed in the patents in suit. Plaintiffs invented the first viable drive-on dry dock. They started their development work using floating cubes supplied by JetFloat, Ltd. that had been on the market for many years. Declaration of W. Allan Eva III (Doc. 119 at Exhibit 1) at ¶ 18. Once they made their invention, the plaintiffs enjoyed substantial success. As of December 2004, they had sold over 10,000 patented docks, yielding over $50 million in dealer and direct sales. *Id.* at ¶ 19. From 1997 to 2004, the plaintiffs were on the Weatherhead List of the Top Ten fastest growing companies in Northeastern Ohio. Their debut year on the List exhibited a growth rate exceeding 1000%. *Id.* at ¶ 20. In contrast, others, like Nevil Petrini, tried but failed to achieve viable drive-on dry docking. *See* Petrini Deposition (Doc. 127) at 71-74.

Others in the marine field saw the plaintiffs' success and so began copying the invention disclosed in the patents in suit. *Id.* at ¶¶ 21-23. Over the years, a number of such copiers have admitted their infringement of one or more of the patents in suit and conceded their validity, thereby acquiescing in the validity of the patents. In *Jet Dock Licensing, v. For-Ever Dock Corp.*, Case No. 1:98CV0121 (N.D. Ohio July 16, 1998), U.S. District Judge Lesley Wells

entered a default judgment and ordered the defendant to submit to an accounting for all of its past acts of infringement of the '013 and '833 patents and permanently enjoined it from further infringement. *Id.* at ¶ 23. Candock Canada, a manufacturer of modular docks, similarly determined to no longer sell floating drive-on dry docking systems in the United States. *See* Ahern Deposition (Doc. 121) at 32-33.

Furthermore, the plaintiffs have received significant praise and recognition for their inventions. Jet Dock was a finalist for the "Innovation Award" offered by the International Marine Trades Exhibition and Conference in 1997. Jet Dock was also a finalist for the Innovation Award from the Enterprise Development Incorporated in Northeast Ohio. Doc. 119 at Exhibit 1, ¶ 24.

The Court holds that the defendants have not demonstrated by clear and convincing evidence that the subject matter of the patents in suit would have been obvious to one of ordinary skill in the art at the time of invention.

**The On-sale bar**

Finally, the Court next considers the defense of whether the '013 and '113 patents are invalid under the on-sale bar, 35 U.S.C. § 102(b). The determination of whether an invention was on sale within the meaning of § 102(b) is a question of law. *Scaltech, Inc. v. Retec/Tetra, LLC*, 269 F.3d 1321, 1327 (Fed.Cir. 2001). A claimed invention is considered to be on sale under § 102(b) if the invention is sold or offered for sale more than one year before the filing date of the patent application. *Honeywell Intern. Inc. v. Universal Avionics Systems Corp.*, 488 F.3d 982, 998 (Fed. Cir. 2007). Here the filing dates of the applications for the '013 patent and the '113 patent are July 11, 1995 and September 12, 1997, respectively. Thus, for purposes of the on sale bar, the critical dates are July 11, 1995 and September 12, 1997.

In order to invalidate a patent under the on-sale bar of 35 U.S.C. § 102(b), an accused infringer must demonstrate by clear and convincing evidence that there was a definite sale or offer to sell more than one year before the application for the patent and that the product sold or offered for sale anticipated the claimed invention or rendered it obvious.  *Minnesota Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1301 (Fed.Cir. 2002).  A determination that a product was placed on sale prior to the critical date is a conclusion of law based on underlying findings of fact.  *Id.* (citing *Linear Tech. Corp. v. Micrel, Inc.*, 275 F.3d 1040, 1047 (Fed.Cir. 2001)).

With respect to the on-sale bar defense, the defendants presented no admissible evidence that anyone actually practiced the methods of claims 1 and 15 of the '013 patent and claim 28 of the '113 patent more than one year prior to the filing dates of the patents.  On the record presented, therefore, § 102(b) likely does not apply.

## **CONCLUSION**

Based upon the foregoing, plaintiffs' Motion for Partial Summary Judgment on the Issue of Patent Validity (Doc. 115) is GRANTED and defendants' Motion for Summary Judgment on the Issue of Patent Validity (Doc. 116) is DENIED on the grounds that there is no genuine issue as to any material fact and plaintiffs are entitled to a judgment as a matter of law that the defendants cannot carry their burden of proof to establish that claims 1 and 15 of the '013 patent and/or claim 28 of the '113 patent are invalid.

IT IS SO ORDERED.

| | |
|---|---|
|  June 26, 2009 | */s/ John R. Adams* |
| Date | John R. Adams |
| | U.S. District Judge |