IN UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| OCEAN INNOVATIONS, INC. ) <br> (f/k/a JET DOCK LICENSING, INC.), et al. ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> QUARTERBERTH, INC., et al. ) <br> ) <br> Defendants. ) <br> ) | CIVIL ACTION NO.: 1-03-CV0913 <br><br> JUDGE JOHN R. ADAMS <br><br> **MOTION FOR SANCTIONS AND REQUEST FOR STATUS CONFERENCE** |

Jet Dock was stunned when it received an e-mail from defendants' counsel confessing that there was no QuickBooks data after March 31, 2009 even though Mr. Reuter and defendants' counsel both represented to the Court that such information existed and had been produced to Jet Dock. Jet Dock has received absolutely no information concerning the business activity of ERA during the most recent 14 months. Jet Dock has received no information concerning sales of floats and/or docks assembled from floats during that time period, nor has it received any information concerning the purchases of floats from molders during that time period. In short, ERA has utterly failed to provide current information required by this Court, and it has made false and

1

misleading statements to the Court concerning what it has produced. For this reason, Jet Dock seeks the ultimate sanction of judgment against the remaining defendants as well as an immediate status conference. Specifically, Jet Dock seeks sanctions in the form of a judgment in Jet Dock's favor in connection with all docks, including those that may include one or more double floats, and enforcement of the stipulation of the number of floats sold, ECF 247-1. Failing that, Jet Dock seeks an order allowing proof of infringement in this case by docks that may have a double float and enforcement of the stipulation as to the number of floats sold.

**Background Facts.**

At the hearing on June 14, 2010, defendants' counsel delivered a CD labeled "General Ledger through May 31, 2010" to Jet Dock's counsel. ECF 388, page 3. During the hearing Mr. Rimas identified the CD:

> THE COURT: What does the document, the CD, what records does it supposedly contain?
> MR. VICKERS: It says General Ledger, which I think is the QuickBooks general ledger. Is that what this is?
> MR. RIMAS: It is the -- yes.

ECF 388, p. 3. And later Mr. Rimas told the Court:

> MR. RIMAS: Under the time period cited I did not have time to review the contents of the CD provided, but I understand it was from John Reuter's office and I understand them to be the updated QuickBooks information which he will be in a position to more specifically identify.

ECF 388, p. 10.

Mr. Reuter testified that the CD contained a backup of all the QuickBooks data and was current.

2

> MR. RIMAS: If I may, Your Honor, mark as
> Defendants' Exhibit 4, this is the QuickBooks CD that I
> obtained from Mr. Reuter that was presented to plaintiffs'
> counsel.
>
> * * * *
>
> Q. Could you please identify Exhibit 4?
> A. This is a QuickBooks file that reflects general ledger
> activity and other underlying data through May 31, 2010.
> Q. And could you summarize briefly for me the categories
> of available data in that QuickBooks?
> A. Well, this will have the general ledger and also
> subsidiary ledgers which would be the accounts receivable,
> accounts payable.
> Q. And how does the information contained in the CD
> marked as Exhibit 4 tie in or relate to in any way with
> respect to Defendants' Exhibit Number 3?
> A. This will include prior year data of subsidiary
> information which includes the purchase information which
> was used to summarize this data.
> Q. And just for the record, when you say this includes,
> you're referring to the QuickBooks CD?
> A. Correct.
> Q. Marked as Exhibit 4?

ECF 388, p. 38-39. Exhibit 4 was marked but was not admitted into evidence.

After the hearing the CD was not returned to Jet Dock's counsel. Mr. Rimas informed the undersigned that he had left it with the court reporter. Jet Dock immediately requested another copy of the CD. It had not arrived by June 17, and an e-mail inquiry was sent. The CD arrived the following day. Because of other commitments, the undersigned was not able to review the CD received June 18 until June 26. At that time it was discovered that the CD included only data through 3/31/2009, most, if not all, of which had been previously produced. In other words, the CD was missing the most recent 14 months of data and was not the same as what had been represented to the Court as having been produced. Despite repeated requests, the most

3

recent QuickBooks data has not been provided. After a series of inquiries, Mr. Rimas sent the following startling e-mail (with emphasis added):

> Vytas Rimas <vytas@rimaslawfirm.com>    Wed, Jul 7, 2010 at 10:15 AM
> To: Gordon Kinder <gkinder@gordonkinder.com>
> Cc: Tom Vickers <tvickers@vickerslawgroup.com>, Allan Eva <aeva@jetdock.com>
> Gordon,
>
> In response to your queries, the proposed stipulation has been further revised to provide for a determination of damages, if any, based upon floats. Roy Ahern and the Versadock Partnership have made no sales. All sales were made by ERA Marine. This is reflected in the revised stipulation. Attached is a clean copy of the last revision upon which the mentioned changes are indicated.
>
> ***You have received all of the Quick Books data. ERA Marine discontinued fully using Quick Books after March, 2009 when Janice Peterson left the company. Revenue and expense transactions are recorded.*** A separate sales schedule from John Reuter's office should be available by week's end.
>
> Vytas
> Vytas Rimas, Esq.
> Rimas Law Firm, PLLC
> 18281 Minnetonka Blvd., Suite A
> Minneapolis, MN  55391
> 612-876-7733 Office
> 612-720-2786 Cell
> 800-208-6315 Fax
> www.rimaslawfirm.com
> vytas@rimaslawfirm.com

In light of this most recent e-mail, the testimony of Mr. Reuter and the statements made by Mr. Rimas during the hearing are materially false and misleading. Moreover, the supposed "sales schedule" would not be admissible evidence, and defendants are not offering any of the underlying records of floats purchased and floats and/or docks sold so

that the "sales schedule" can be tested for accuracy. ERA has thus utterly failed to fulfill its discovery obligations.[1]

**Argument.**

Jet Dock needs all the sales records of ERA Marine Products Inc. and all records of floats purchased from molders in order to establish its damages now that ERA has backed away from the stipulation it entered. That stipulation covered all sales through the time of trial (including docks which included one or more double floats). Without the stipulation, Jet Dock needs ERA's records reflecting the purchase and sale of floats. Sales records from April 1, 2009 to the present have not been produced, and without these records Jets Dock's proof will be incomplete.

Both ERA's accountant and its counsel materially misrepresented the facts during the hearing in what appears to be a concerted effort to hide relevant information. Both had every opportunity to tell the Court that QuickBooks was no longer "fully" used, but they failed to do so.[2] Both Mr. Reuter and Mr. Rimas could have reproduced the General Ledger CD and send it to Jet Dock's counsel, but they failed to do so. Mr. Ahern was

---

[1] Defendants (specifically Mr. Ahern) were also asked to provide financial and sales information relating to Versadock International, a customer of ERA and apparently owned in part by Mr. Ahern, as well as two Florida companies, United Marine Products Group LLC and United Marine Marketing Group LLC, recently set up by Mr. Ahern. Jet Dock believes these companies have been used to siphon sales and income from Versadock/ERA, and the refusal of defendants to produce ERA's current business records only deepens this suspicion. No documents concerning any of these companies have ever been produced.

[2] The term "fully" is opaque at best. If the March 31, 2009 CD has "all of the QuickBooks data" as Mr. Rimas now claims, then there is no other QuickBooks data to be had and "fully" is just a wiggle word attempting to cover a falsehood. If there is partial QuickBooks data for the most recent 14 months, it should have been produced long ago.

present in court, heard the testimony and the statements of counsel, and he failed to correct them.

At the June 14 hearing, the Court expressed concern that defendants were actively obstructing discovery. The revelation that QuickBooks data does not exist for the last 14 months after testifying and representing to the Court to the contrary is proof positive that the Court's concerns were well founded.

The Court is authorized to sanction defendants up to and including entry of judgment for violation of their discovery obligations. FRCP Rules 37(b)(2)(A), (B), and (C), and (c)(1) authorize entry of judgment; the Court may also rely on its inherent authority. *Chambers v. Nasco, Inc*, 501 U.S. 32, 49 (1991) ("The Court's prior cases have indicated that the inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct."); *Mayle v. Ohio Power Co.*, 853 F.2d 927 (6th Cir. 1988) ("A district court has the authority to provide for the ultimate sanction of dismissal for noncompliance with local court rules.") That is the appropriate remedy for this case. The Court should enter a judgment that defendant's docks, whether made with square floats or made with one or more double floats, as explained below, infringe. The Court should enforce the stipulation that 100,000 flotation units have been incorporated into docks plaintiffs accuse of infringement.

The inclusion of double floats is proper for several reasons. First, at the time the stipulation the parties both believed that docks which included double floats would be part of this case. Jet Dock had been aware of the existence of the double floats in the market place since November 2008. At that time defendants were in the process of hiring new counsel, and as soon as Mr. Rimas was in place, he was made aware that Jet Dock

accused the docks which incorporate double floats as infringements, as reflected in the stipulation entered January 21, 2009 which both sides agree was intended to include double floats. Defendants cannot claim surprise.

Second, the docks that are made with at least one double float infringe in exactly the same way as docks made without. The chart below is representative, showing a dock made with all square (in plan view) floats on the left and a similar dock made with some double floats on the right. The claim and the drawings are color-coded to show how the key requirements of infringement are met in the same way for both docks. It should be noted that the claims in the patents in suit all relate to "floating dock assembl[ies]" irrespective of the particular floats of which they may be constructed. In addition the claims all use the open ended transition "comprising" to introduce the requirements of the claims. Under these circumstances the addition of elements beyond those required by a patent claim does not change an infringing device into an non-infringing one, as this Court noted (correctly) when ruling on the summary judgment of infringement motions. There the Court stated:

> The mere addition of the roller between the arms does not take this dock outside the scope of claim 1 of the '013 patent. A product cannot escape a finding of infringement ... merely because it has added elements or functions to the patented device if it has adopted the main features of that device.

ECF 243 at p. 10 (citations omitted). As illustrated below, the infringement by docks that have at least one double is entirely independent of that fact. Accordingly, there is no prejudice to the defendants by permitting proof of infringement under the previously established theories of infringement.

7

U.S. Patent 6,431,106

4. A floating dock assembly for a water craft having a hull, said assembly comprising a plurality of floatation units that form a craft receiving surface, the floatation units being flexibly connected to each other for relative pivoting movement for permitting the craft receiving surface to flex between a craft receiving position while the water craft is being driven onto the dock, and a craft supporting position, and further wherein at least some of the floatation units are spaced apart to contact and support the hull of the craft on opposite sides of the axial centerline of the craft when the craft is on the dock, wherein once the water craft is driven on the dock, the weight of the craft supplies a downward force that tends to keep the floatation units together so that the dock becomes substantially rigid.

6. A floating dock assembly as set forth in claim 4, wherein the plurality of floatation units form a pair of spaced apart support arms to support the hull of the craft on opposite sides of the axial centerline of the craft when the craft is on the dock.

7. A floating dock assembly as set forth in claim 6, wherein the spaced apart support arms are connected to each other by at least one support member disposed therebetween.



**SB-209**  5 x 11
**Small Boat Dry Dock**
Length: 209" (17.5')
Width: 95" (8')
Capacity: 2000 lbs.
Boat Length (max.): 15'



**SJB-209**
Small Jet Boat Dry Dock
(for craft up to 14' in length)

Length: 209" (17' 5")
Width: 95" (7' 11")

8

The two docks shown above are the same size and infringe in precisely the same way. The only difference is that the dock on the left has "square" floats added to the highlighted, infringing core, while the dock on the right has added some double floats in place of some of the "square" floats. Because both docks have the same infringing core and differ only in what is added to that core, the law on which this Court has already relied compels the conclusion that both these docks infringe, and there is no reason to find that one infringes and the other does not. Indeed, the parties both expected the double floats to be considered in this action.

Ordering docks with at least one double float to be covered in this action will also serve substantial justice. Jet Dock has been attempting to enforce its patents for nearly half their lives. Defendants have already demonstrated they want to continue this battle even though they have consistently failed on the merits and are willful infringers. ERA's counsel has even said that if ERA cannot continue this fight, it will find a surrogate party to bring an action in ERA's stead. Thus it is in the interest of justice to permit Jet Dock to prove the docks which include at least one double float infringe, so as to bring this matter to its final conclusion.[3]

Jet Dock's earlier motion for leave to file a second supplemental complaint (ECF 248) was not required by the Federal Rules of Civil Procedure. As demonstrated above, the same theories of infringement and the same rules of law that Jet Dock and this Court

---

[3] There is a fitting irony to sanctioning the defendants' failure to give discovery by including docks made with double floats in this suit. It was the defendants' backing away from their stipulation that made the discovery necessary. The proposed sanction makes the discovery unnecessary and thus cures the failure to produce documents by including double floats and enforcing the stipulation previously agreed to by the parties. Sanctions are still required because of the failure to comply with this Court's Orders and the misrepresentations made to the Court and Jet Dock.

have already applied in ruling on summary judgment motions apply equally to docks that happen to include a double float. The proposed Second Supplemental Complaint was only to clarify the scope of the complaint, and while it should have been filed sooner, the defendants knew that docks with double floats were accused. Because an amended complaint was not required, this case can proceed against docks with double floats without additional pleading.

If the Court does not enter judgment as a sanction, then the court should consider as an alternate sanction permitting proof of infringement by docks which include at least one double float and enforcing the 100,000 floatation unit stipulation (ECF 247-1).

**Conclusion.**

In view of the foregoing Jet Dock seeks a sanction of judgment against ERA Marine Products Inc. and George Dabrowski that they have infringed Jet Dock's patents including through the sale, offer for sale, and inducement of sale of docks which include at least one double float.

Respectfully submitted,

*s/Gordon D. Kinder*

F. Thomas Vickers (0021900)
Vickers Law Group Co., LPA
1042 Fresno Drive
Westlake, OH 44145
tvickers@vickerslawgroup.com
216-401-3202

Gordon D. Kinder (0019644)
Law Office of Gordon D. Kinder
2231 Delamere Dr.

    Cleveland, OH 44106
    Tele:   216 401 6469
    Fax:   216 373 5697
    gkinder@gordonkinder.com

and

Risto Pribisich (0081758)
Ulmer & Berne LLP
Skylight Office Tower
1660 W. Second Street, Suite 1100
Cleveland, Ohio 44113-1448
Telephone: (216) 583-7000
Facsimile: (216) 583-7001
rpribisich@ulmer.com

Attorney for Plaintiffs

### Certificate of Service

I certify that on July 9, 2010, a copy of the foregoing

**MOTION FOR SANCTIONS AND REQUEST FOR STATUS CONFERENCE**

was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

    s/Gordon D. Kinder
    Gordon D. Kinder (0019644)
    Law Office of Gordon Kinder
    2231 Delamere Dr.
    Cleveland Hts., OH 44106

    tel:   216 401 6469
    fax:   216 373 5697
    email: gkinder@gordonkinder.com
    Attorney for Plaintiffs