## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| OCEAN INNOVATIONS, INC. et al, | ) CASE NO. 1:03-CV-00913 |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) JUDGE JOHN R. ADAMS |
| v. | ) |
| | ) |
| QUARTERBERTH, INC. et al , | ) |
| | ) MEMORANDUM OF OPINION AND |
| Defendant. | ) ORDER |
| | ) |

This matter came before the Court upon Plaintiffs' Motion for Sanctions. Doc. 390. Since

June 2003, ERA Marine has failed to adequately and completely respond to Plaintiffs' requests

for documents.  Moreover, ERA Marine has ignored this Court's numerous orders requiring it to

provide Plaintiffs with discovery.  After considering the parties' briefs and the testimony and

arguments made during the hearings, this Court GRANTS in part and DENIES in part Plaintiffs'

Motion for Sanctions.

## INTRODUCTION

Plaintiff Ocean Innovations, Inc. owns United States Letters Patent Nos. 4,529,013,

5,682,833, 5,931,113, 5,947,050, and 6,431,106 issued by the United States Patent and

Trademark Office in 1996, 1997, 1999, 1999, and 2002, respectively.  The patents each involve

the designs of floating drive-on dock assemblies. Plaintiff Jet Dock Systems, Inc. is the sole

licensee under each of the five patents.  Plaintiffs allege that each of the defendants engaged in

making, using, selling, and/or offer for sale docks that infringed on one or more of Plaintiffs'

patents or induced others to make, use, sell, or offer for sale infringing dock(s).  Plaintiffs argue that throughout this litigation Defendant ERA Marine Products, Inc. has failed to adequately respond to Plaintiffs' discovery requests.

## PROCEDURAL HISTORY

On May 15, 2003, Ocean Innovations, Inc. and Jet Dock Systems, Inc. (collectively, "Plaintiffs") sued Quarterberth, Inc. ("Quarterberth"), Noel W. Lott, Jr. aka Bill Lott ("Lott"), Teo Leonard ("Leonard"), Gulf Coast Floating Docks, Inc. ("Gulf Coast"), Versadock, Diversified Wholesale Marine, Inc. dba Sailorman ("Sailorman"), ERA Marine Products, Inc. ("ERA Marine"), George Dabrowski dba PIC Marine ("Dabrowski"), James Alexander ("Alexander"), and Roy Ahern ("Ahern") in this action alleging infringement of various claims of patents owned by Ocean Innovations, Inc. and licensed exclusively to Jet Dock Systems, Inc.

In 2006, Quarterberth and Alexander filed petitions in the United States Bankruptcy Court for the Middle District of Florida, Tampa Division, being Case Nos. 8:06-bk-05293 and 8:06-bk-05292, respectively. On October 13, 2006, this Court entered a Judgment Entry Perpetually Staying Further Proceedings Against Quarterberth and Alexander. Doc. 162.

Plaintiffs filed a Second Amended Complaint and Supplemental Complaint on November 11, 2008, alleging claims against Alexander, Quarterberth, Lott, Leonard, Gulf Coast, Versadock, Sailorman, ERA Marine, Dabrowski and Ahern[1].  Doc. 209. On March 31, 2009, the Court entered a Memorandum of Opinion and Order severing Plaintiffs' claims against Lott and dismissing them without prejudice for improper venue.  Doc. 236, page 14.   The Court also found that Versadock was a partnership, not a dba of ERA Marine. Doc. 236, page 8.  The Court

---

[1] The proceedings remained stayed against Alexander and Quarterberth. Hereinafter, the term "Defendants" will refer to defendants Leonard, Gulf Coast, Versadock, Sailorman, ERA Marine, Dabrowski, and Ahern, collectively.

determined it has personal jurisdiction over Versadock as well as ERA Marine, Ahern, and Leonard, Versadock's individual, nonresident general partners. Doc. 236, page 8.

On June 26, 2009, this Court entered a Memorandum of Opinion and Order addressing the validity of claims 1 and 15 of U.S. Patent 5,529,013 and claim 28 of U.S. Patent 5,931,113. Doc. 238.  The Court found these three claims valid as against all the allegations of invalidity raised by ERA Marine.

On September 30, 2009, this Court entered a Memorandum of Opinion and Order, finding that certain of the docks sold, offered for sale, or assembled by Defendants infringed claims 1 and 15 of U.S. Patent 5,529,013 and claim 28 of U.S. Patent 5,931,113. Doc. 243. Plaintiffs moved for a preliminary injunction barring the sale of certain docks sold by Defendants on October 5, 2009. Doc. 247.  On October 26, 2009, this Court granted Plaintiffs' preliminary injunction.  Doc. 272.

On December 11, 2009, the clerk entered default against Leonard, Gulf Coast, Sailorman, Ahern, and Versadock for failing to answer, move, or otherwise plead as required by law. Doc. 307.  Plaintiffs and Leonard then entered into a settlement agreement, and the Court entered an Agreed Judgment, thus dismissing Leonard. Doc. 326.  On May 14, 2010 the Court awarded Plaintiffs judgment against Sailorman, Ahern, Versadock and Gulf Coast, jointly and severally, in the amount of $15,627,000 plus attorneys' fees. Doc. 332. The Court thereafter entered a Permanent Injunction against Sailorman, Ahern, Versadock and Gulf Coast and permitted Plaintiffs to engage in post-judgment discovery to ensure compliance with the permanent injunction. Doc. 333.

Plaintiffs filed a Motion for Sanctions against ERA Marine and Dabrowski on July 9, 2010. Doc. 390.

## **BACKGROUND INFORMATION**

In Plaintiffs' first set of discovery requests served on ERA Marine on June 16, 2003, Plaintiffs requested:  "All documents that refer or relate to any sales by you of floating docks or offers by you to sell floating docks, including, without limitation, purchase orders, invoices, quotations, sales receipts, order acknowledgements, proposals and shipping documents."  See Doc. 38- 2, Document Req. No. 3.  ERA Marine responded on July 21, 2003, and objected to the request as seeking proprietary and/or confidential information. See Doc. 38-2.

On September 12, 2003, Plaintiffs moved to compel ERA Marine's responses stating that they needed "full discovery regarding [ERA Marine's] sales of and offers to sell floating docks and the relationship (including an apparent conspiracy to infringe Jet Dock's patents) among Defendants. [ERA Marine], however, [has] refused to provide the needed discovery, as discussed below, and thereby [is] attempting to delay the progress of this case." Doc. 38.  Plaintiffs further argued that "[ERA Marine's] refusal to provide the details of [the] floating dock sales and the identities of the dealers selling such docks is unsustainable. Pricing information is needed to establish the amount of profits [ERA Marine] generated on [its] infringing sales for which [ERA Marine] must make an accounting to Jet Dock." Doc. 38.  ERA Marine agreed to provide the requested information but only after the Court issued a protective order.  Doc. 44, page 4 & Doc. 46.

Discovery closed on January 14, 2004.  On March 26, 2008, Plaintiffs moved for leave to take discovery concerning floatation units sold by ERA Marine since the close of the discovery period. Doc. 166.  Plaintiffs intended to seek discovery "relating to the structural changes to [ERA Marine's] floatation units, the reasons for those changes, and the number and style of docks sold[.]" Doc. 166.  Plaintiffs stated that such discovery was "necessary to update Jet

Dock's damage calculations as well as to explore [ERA Marine's] new, infringing designs." Doc. 166, page 2.  During a status conference on September 25, 2008, the Court granted Plaintiffs' Motion to Take Additional Discovery. Doc. 206.  Specifically, the Court ordered:  "Discovery is reopened and shall be completed on or before seven (7) calendar days before the mediation conference." Doc. 206.

On September 26, 2008, Plaintiffs served their Second Request for Documents and Things upon ERA Marine. Doc. 228-1, page 6. Plaintiffs requested:

1.  All documents that relate to tooling used to manufacture Components including engineering drawings of tooling, engineering drawings of Components or pieces of Components, correspondence, purchase orders, financing documents, invoices, shipping documents, and documents relating to payments to tool makers.

2. All documents that relate to the purchase, *e.g.*, from a molder, of Components to be assembled into floating docks, including technical specifications or technical drawings related to the Components, purchase orders, *e.g.*, to a molder, shipping documents, invoices for Components purchased by any of the defendants, financial records including financing documents relating to the purchase of Components, and all records relating to or reflecting payment for Components.

3. All documents relating to the sale of Components by the defendants, *e.g.*, to a distributor or end user, including purchase orders, invoices and documents reflecting payment received by the defendants for Components, shipping documents relating to the shipment of Components to purchasers, and documents describing or relating to the configuration into which the Components were assembled or intended to be assembled.

4. All documents that relate to the reasons for changing from any of the versions to another design or configuration for closing Components.

5. If defendants will argue that $20/floatation unit exceeds a reasonable royalty, then plaintiffs also request all documents that reflect expenses chargeable against income derived from the sale of floating drive-on docks by defendants.

6.  A representative sample of each float other than floats purchased from Candock, Version 1, and Version 2.  This request specifically includes a sample of the floats referred to by defendants' counsel at the status conference held September 25, 2008.

Doc. 228-1.

On November 18, 2008, ERA Marine had not yet responded to the discovery requests. Plaintiffs requested a status conference to discuss both ERA Marine's failure to respond and its counsel's recent motion to withdraw as counsel.  The Court conducted a status conference on November 26, 2008 and scheduled an evidentiary hearing on December 22, 2008 to hear testimony from Roy Ahern and Teo Leonard regarding the whereabouts of documents not yet produced to Plaintiffs[2]. Doc. 216 & 221.  After a partial hearing, the Court continued the hearing until January 9, 2009, and ordered the parties to submit updates on the status of the discovery sought by the Plaintiffs.

As of January 9, 2009, despite receiving over 4,000 documents from ERA Marine, Plaintiffs contended that the production was incomplete. Doc. 224. Plaintiffs stated that ERA Marine had not produced invoices or correspondence from tooling manufacturers nor documents originating with tool makers or correspondence with tool makers nor invoices. Additionally, although ERA Marine produced many documents relating to the sale of components by it for the period January, 2003 through August, 2008, Plaintiffs asserted that the production was incomplete. Doc. 224. ERA Marine also failed to produce any documents relating to its change in design of its closing units or to expenses chargeable against income derived from the sale of floating drive on docks. Doc. 224.

---

[2] As of December 22, 2008, all original defendants except Quarterberth and Alexander remained active parties in the litigation.  In June of 2010, after issuing a permanent injunction against Ahern, Versadock, Gulf Coast, and Sailorman, the Court specifically permitted Plaintiffs to conduct discovery on the defaulted defendants. Doc. 333.

At the conclusion of the hearing on January 9, 2009, the Court ordered ERA Marine to produce the following by January 19, 2009:

1. Any and all documents and underlying data, for the time period 2001 forward, used to create the recapitulation or summary that Mr. Ahern referred to during his testimony, that show the number of molds purchased from the six molders of flotation units and the number of flotation units that have been sold;

2. The audit report that was prepared as a result of an audit conducted by John Reuter; and

3. The QuickBooks data from the defendants' entire Minnesota operation that was relied upon in creating the summaries Mr. Ahern referred to during his testimony."

Doc. 227.  The Court also ordered Ahern to appear for a deposition on or before January 20, 2009, in order to give testimony including, but not limited to, the subject of why the design of ERA Marine's flotation units had changed from versions 1 to 2 to 3 over time. Doc. 227.  During both the December and January hearings, this Court warned ERA Marine of the importance of complying with its discovery obligations and of the consequences of failing to comply.

Despite the Court's order, ERA Marine did not provide the discovery to Plaintiffs by January 19, 2009.  Although Plaintiffs had not received the requested discovery, the parties participated in mediation on January 21, 2009.  During the mediation, the parties entered into the following stipulation regarding the number of infringing units sold by Defendants:

It is agreed that 100,000 floatation units have been incorporated into docks sold by the Versadock entity referred to in the Second Amended and Supplemental Complaint and ERA Marine Products, Inc. in the U.S. that plaintiffs have accused as infringing the patents in suit through the entry of judgment by the trial court.

Doc. 247-1.  The stipulation was signed by Vytas Rimas on behalf of all represented defendants[3] except Teo Leonard.  On January 28, 2009, Plaintiffs filed a Motion for Sanctions requesting that the Court issue a show cause order requiring ERA Marine to show why sanctions should not be ordered to compensate Plaintiffs for the cost of addressing ERA Marine's conduct and piecing together the facts surrounding the quantity of infringing floats sold. Doc. 228.  After conducting a hearing on Plaintiffs' Motion for Sanctions, the Court again ordered ERA Marine to provide the documents to Plaintiffs but declined to impose sanctions. Doc. 251.

On November 4, 2009, during a status conference, ERA Marine agreed to provide the remaining financial information to Plaintiffs.  Doc. 291, page 32-33.

The Court held yet another conference on June 2, 2010 to discuss the status of the discovery dispute and ERA Marine's continued failure to provide certain requested documents to Plaintiffs.  ERA Marine no longer agreed to the January 21, 2009 stipulation, which had seemingly resolved part of the previous discovery issue.  The Court ordered ERA Marine to provide the requested documents and threatened sanctions should it fail to do so. The Court ordered defense witnesses John Reuter and Janice Peterson to appear and testify at a hearing on June 14, 2010, and to produce "all the documents (including the underlying purchase documentation regarding floatation units) upon which [Mr. Reuter] relied in completing the audit report and arriving at his conclusions as to how many units were produced and acquired" and "all the documents [Ms. Peterson] relied on in compiling the QuickBooks summaries of flotation units that ERA [Marine] had purchased from the six molders." Doc. 362.

At the beginning of the hearing on June 14, 2010, ERA Marine provided Plaintiffs with a CD that supposedly contained the remaining records that were responsive to Plaintiffs' discovery

---

[3] Attorney Rimas has appeared in this matter on behalf of Defendants ERA Marine, Sailorman, Dabrowski, Ahern, and Lott. Doc. 217, 218, & 220.

requests and this Court's numerous orders. Doc. 388, page 2.  Defense witness John Reuter testified regarding the contents of the CD. Doc. 388, page 13-46.  Mr. Reuter did not access the contents of the disc but testified that the CD contained ERA Marine's financial data through May 2010 in a QuickBooks program format. Doc. 388, page 38-39. Mr. Reuter also testified that he did not input the data into QuickBooks (Doc. 388, page 20-23), he did not review the source of the data (Doc. 388, page 20-23 & 43), and he could not verify or identify whether the data pertained to the sales of single floats versus double floats (Doc. 388, page 37-38).  Mr. Reuter's knowledge of the data contained on the QuickBooks CD was limited to analyzing the data that was input by someone else in order to perform tax related services. Doc. 388, page 37-38.  Mr. Reuter testified that he had never performed any form of "audit" of ERA Marine's financial records. Doc. 388, page 42-43.

Janice Peterson also testified regarding ERA Marine's financial data that was supposedly contained on the QuickBooks CD. Doc. 388, page 47-89.  Ms. Peterson had worked for ERA Marine from February 2008 through March 2009. Doc. 388, page 47.  During that time she had personally input the data from the purchase orders into the QuickBooks program. Doc. 388, page 56-57.  She did not have any knowledge of the sales that occurred after March of 2009. Doc. 388, page 59.  Ms. Peterson did not access the contents of the QuickBooks CD during her testimony.

Neither of ERA Marine's witness used the QuickBooks CD to demonstrate the contents of the disc to the Court.  Counsel for ERA Marine stated that he had not personally viewed the disc, but yet represented to the Court that the disc contained all of the remaining requested information.  Plaintiffs' counsel, having been handed the disc just prior to the hearing, could not verify the contents of the disc at the hearing.

Plaintiffs requested that the Court enforce the stipulation and award Plaintiffs attorneys' fees and costs associated with the Plaintiffs' efforts to obtain the requested information.  At the conclusion of the hearing, the Court took into consideration Plaintiffs' request for attorneys' fees and costs and granted Plaintiffs' motion to compel ERA Marine to produce the requested information.

Plaintiffs later determined that the disc did not contain the documents that they had requested.  As of July 9, 2010, ERA Marine had still failed to provide the information, and Plaintiffs filed a Motion for Sanctions and Request for Status Conference.  Doc. 390.  Plaintiffs requested that the Court sanction ERA Marine and George Dabrowski, the remaining defendants, by enforcing the January 21, 2009 stipulation and entering a default judgment against them for their continued failure to respond to the discovery requests and follow the Court's orders. Doc. 390. The Court held an evidentiary hearing on Plaintiffs' motion on August 10, 11, and 16 of 2010.

During the August hearing, ERA Marine maintained that the QuickBooks CD contained the documents requested and that it had complied with Plaintiffs' discovery requests.  None of ERA Marine's witnesses, however, demonstrated the contents of the QuickBooks CD.  Instead, Plaintiffs demonstrated that the discovery provided by ERA Marine was incomplete and unreliable.  Plaintiffs also demonstrated that the QuickBooks CD did not contain the documents or data as ERA Marine had maintained.

After the close of the hearing, the parties submitted post-hearing briefs. Doc. 423, 425, & 426.  ERA Marine admits it has not produced molder invoices for 2009-2010. Doc. 425, page 17. Ms. Peterson's testimony regarding invoice of ERA Marine's sales of floats and docks only assists in dealing with the QuickBooks data from February 2008 through March 2009 while she

worked for ERA Marine.  ERA Marine does not satisfactorily explain why sales invoices from March 2009 forward have not been produced.

## LAW AND ANALYSIS

Plaintiffs seek default judgment against ERA Marine and George Dabrowski and enforcement of the stipulation entered into between the parties on January 21, 2009.  The Court has the power to dismiss a claim or enter judgment against a party for failure to comply with discovery orders. Fed.R.Civ.P. 37(b)(2)(A).  The "most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 643 (1976). The Court also has the power, under Rule 37, to assess attorneys' fees and costs to the offending party or its counsel. Fed.R.Civ.P. 37(b)(2)(C) and 37(d).

The Court considers four factors on a motion to dismiss or for default under Rule 37: "(1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered." *United States v. Reyes*, 307 F.3d 451, 458 (6th Cir.2002) (quoting *Knoll v. Am. Tel. & Telegraph Co.*, 176 F.3d 359, 363 (6th Cir.1999)). No one factor is dispositive. *Id.*  "[D]ismissal [or default] is proper if the record demonstrates delay or contumacious conduct." *Id.*

The Court has the power to order default even in the absence of expressly considering lesser sanctions; a motion to dismiss or for default is sufficient to put the offending party on

notice that such a sanction is being considered. *See id.* The offending party has the burden to show its failure to comply was due to its inability rather than willfulness or bad faith. *Id.* Dismissal is presumptively appropriate if the party has the ability to comply with a discovery order but has not. *Id.*

The Court also has the inherent power to sanction attorneys and parties before it for contempt and abusive litigation practices. *Roadway Express*, 447 U.S. at 764-65; *Jones v. Continental Corp.*, 789 F.2d 1225 (6th Cir.1986). These powers include the power to dismiss a case or to assess attorneys' fees for acting in bad faith, vexatiously, wantonly, or for oppressive reasons. *Roadway Express*, 447 U.S. at 766.

### Sanctions as to ERA Marine

With these legal principles in mind, the Court has scrutinized all of the evidence before it and is led to the inescapable conclusion that the most serious sanction of striking ERA Marine's Amended Answer, Affirmative Defenses and Counterclaims (Doc. 31) and entering default against ERA Marine is warranted. At each stage of litigation ERA Marine and its counsel have revealed only so much information as they deemed necessary even after the Court made clear that it expected full candor and disclosure. Additionally, ERA Marine purposely and willfully misrepresented to the Court that it had fully complied with the Court's orders.

1. *Willfulness, bad faith, and fault*

Upon review, this Court finds that the first factor weighs heavily in favor of default. ERA Marine has failed to demonstrate that its failure to produce the requested documents was a result of "inability," as opposed to willfulness. Moreover, the Court is greatly disturbed by ERA Marine's flagrant disregard to this Court's orders compelling the production of these documents and by ERA Marine's lack of candor to the Court. This Court finds there is ample evidence that

12

ERA Marine's failure to comply with this Court's orders and produce the discovery sought by Plaintiffs was willful and in bad faith.  This Court gave ERA Marine numerous opportunities to provide the requested documents, yet it chose to produce incomplete responses.  ERA Marine simply did not meet its burden to show that its failure to comply was due to inability rather than willfulness or bad faith.

By example, ERA Marine represented that the QuickBooks CD given to Plaintiffs during the June 2010 sanctions hearing contained all remaining documents that would allow Plaintiffs to compute the total number of infringing docks or units sold by Defendants through May 2010 – including the invoices to molders.  During the June 2010 hearing, neither of ERA Marine's witnesses accessed the data contained on the disc.

ERA Marine again represented to the Court that the QuickBooks CD contained the requested discovery during the August 2010 hearing.  Despite the fact that the very purpose of the hearing was to determine whether ERA Marine had sufficiently responded to discovery, ERA Marine still did not produce a witness who had accessed the data contained on the QuickBooks CD.  Moreover, the only witness who had reviewed the underlying source documents for the data on the disc was Ms. Peterson who only had knowledge regarding orders made from February 2008 through March 2009.  No other witness had reviewed or offered testimony about the underlying source documents.  Accordingly, no one could testify regarding the requested documents or the disc's purported satisfaction of Plaintiffs' discovery requests. Instead, Plaintiffs have demonstrated that the disc merely contains a glorified checkbook register and does not include a complete set of invoices or purchase orders between ERA Marine and its molders or suppliers[4].

---

[4] ERA Marine's presentation of accounting summaries and reports made from the data were not supported by any underlying source documents or testimony (other than Ms. Peterson's limited testimony) and are, therefore, useless.

13

ERA Marine and its counsel have delayed the progression of this lawsuit by refusing to provide proper discovery on ERA Marine's sales of floating docks and/or units used to build the floating docks. ERA Marine and Attorney Rimas affirmatively misled Plaintiffs – and more importantly, this Court – as to the production of documents and compliance with Court orders. Specifically, ERA Marine and Attorney Rimas misled the Plaintiffs and this Court in the following ways:

- After entering into a stipulation regarding the number of infringing units sold by defendants, ERA Marine made contradictory statements regarding its intent to honor the stipulation.

- ERA Marine's representative, Roy Ahern, represented to this Court that ERA Marine's accountant, John Reuter, had performed an audit of ERA's finances, when Mr. Reuter had not.

- Ahern, on behalf of ERA Marine, and Attorney Rimas represented to the Court that they had knowledge of the contents of the QuickBooks CD, when, in fact, neither had viewed the information on the disc.

- On behalf of ERA Marine, Ahern certified to the Court that the discovery production was complete. Doc. 384-1.

Moreover, ERA Marine failed to show that the contents of the QuickBooks CD satisfied the discovery requests. Despite ERA Marine's contention that the disc satisfied its discovery obligation, ERA Marine did not bring a software program to the hearing that would enable the Court or ERA Marine's witnesses to access the disc. In fact, ERA Marine presented no evidence during the hearing that the disc contained the requested documents.

At the Court's request, Plaintiffs accessed the disc using Plaintiffs' counsel's laptop on which the QuickBooks program had been loaded.  Plaintiffs then demonstrated to the Court that certain requested information was not contained on the disc. Doc. 421, page 54-69. For example, Plaintiffs demonstrated that vendor invoices could not be obtained by using the QuickBooks data provided by ERA Marine on the QuickBooks CD. Doc. 421, page 54-69. To the Court's astonishment, Attorney Rimas objected to Plaintiffs' counsel's use of the program, stating that it was unfair that only Plaintiffs were allowed to demonstrate the disc's contents.  But when the Court requested that Attorney Rimas access the program using Plaintiffs' counsel's laptop, Attorney Rimas declared that he did not know how to use the program.  Ahern, who attended the hearing on behalf of ERA Marine, also did not know how to use the program. ERA Marine represented to the Court during both the June 2010 and August 2010 sanctions hearings that it knew the contents of the disc. Since that time, the Court has learned that ERA Marine had never accessed the disc. It finds ERA Marine's representations during those hearings disingenuous.

Eventually, after significant trouble, ERA Marine pulled two invoices from the QuickBooks CD, yet after further questioning by this Court, ERA Marine was unable to locate additional invoices or demonstrate that all requested invoices were available on the disc.  Instead, Plaintiffs again demonstrated that other documents sought were not available on the disc.

2.  *Prejudice*

With regard to the second factor, this Court finds that Plaintiffs have been prejudiced by ERA Marine's misconduct.  Discovery in this case was originally closed in January of 2004, and reopened by this Court in September of 2008 to allow for the limited discovery that Plaintiffs still seek.  The requested discovery would supposedly show the number of infringing units sold, made, used, or offered for sale by ERA Marine and would demonstrate whether ERA Marine has

15

continued to engage in the sale of certain infringing docks even after this Court issued an injunction. By failing to provide the discovery as ordered, ERA Marine has prevented Plaintiffs from pursuing their claims and delayed this litigation for nearly seven years.

### 3. Notice

The Court finds that the third factor, i.e., notice of the severity of a possible sanction, weighs in favor of the requested sanction. The parties participated in numerous status conferences, pretrial, hearings, and arguments regarding the discovery dispute. On multiple occasions, this Court has warned ERA Marine of the consequences of failing to provide the requested documents. For example, during the June 14, 2010 hearing, the Court warned that sanctions could be imposed "up to and including judgment in favor of the plaintiffs[.]" Doc. 393, page 20. Moreover, Plaintiffs' motion specifically requests a sanction of default, thereby providing notice to ERA Marine of the severity of the sanction sought. *See U.S. v. Reyes*, 307 F.3d at 458.

### 4. Less severe sanctions

With regard to the fourth factor, the Court notes that it has considered less severe sanctions. Specifically, the Court considered levying a fine against ERA Marine and its counsel for the repeated misconduct. Given the procedural posture of this case, however, nothing short of default judgment would be sufficient. This matter has been pending since 2003 and ERA Marine has taken every opportunity to delay these proceedings. Moreover at this point, any discovery provided by ERA Marine cannot be trusted as a complete response. Plaintiffs demonstrated numerous inconsistencies between discovery previously provided by ERA Marine and documents obtained by Plaintiffs through other means. Additionally, ERA Marine's own acts and testimony revealed that discovery provided by it is unreliable and incredible. Time after

time ERA Marine has ignored the Court's orders. Thus, the severe sanction of default is warranted.

## George Dabrowski dba PIC Marine

Plaintiffs also requested that this Court enter default judgment against Dabrowski as a discovery sanction. In support of their request, Plaintiffs assert that Dabrowski is a joint tortfeasor whose "liability rises and falls" with ERA Marine's. (Doc. 426, page 8).

Dabrowski allegedly sold, offered for sale, and assembled infringing docks. He is, and has always been, represented by the same attorneys as ERA Marine. The stipulation entered into on January 21, 2009 was signed by Attorney Rimas on behalf of all defendants except Teo Leonard. Dabrowski appreared at the sanctions hearing in August 2010, but on multiple occasions has been excused from personal appearance before this Court.

Dabrowski testified that he was not an employee of ERA Marine, that he had never received compensation from ERA Marine, and that he did not have access to any of ERA Marine's corporate records. (Doc. 420, page 102-103). Plaintiffs do not assert that Dabrowski failed to respond to discovery requests propounded upon him. Plaintiffs, however, request that this Court sanction Dabrowski for his association with ERA Marine (and Ahern).

Plaintiffs have not set forth adequate grounds for this Court to sanction Dabrowski; nor have they cited any case law to support the suggestion that Dabrowski must be sanctioned because ERA is being sanctioned. Therefore, Plaintiffs' Motion for Sanctions is denied as it applies to George Dabrowski.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiffs' Motion for Sanctions (Doc. 390) is hereby GRANTED IN PART and DENIED IN PART.  Plaintiffs' Motion for Sanctions is granted as it applies to ERA Marine; the Amended Answer, Affirmative Defenses and Counterclaims against Ocean Innovations, Inc and Jet Dock Systems, Inc filed by ERA Marine Products, Inc. (Doc. 31) are hereby STRICKEN. Default Judgment is GRANTED against ERA Marine as stated below.

Plaintiff's Motion for Sanctions is denied as it applies to George Dabrowski.

## JUDGMENT AGAINST ERA MARINE

1.      Plaintiff Ocean Innovations, Inc. is the owner by assignment of United States Letters Patent Nos. 4,529,013, 5,682,833, 5,931,113, 5,947,050, and 6,431,106 (collectively, the "Jet Dock Patents"); Plaintiff Jet Dock Systems, Inc. is the sole licensee under these five patents.

2.      The Jet Dock Patents have not been shown to be invalid.

3.      Defendant ERA Marine Products, Inc. has infringed on the Jet Dock Patents by virtue of their actions in making, using, selling and/or offering to sell certain floating docks as alleged in the Second Amended Complaint and Supplemental Complaint. Defendant ERA Marine Products, Inc. has also induced others to practice the inventions covered by the claims of the Jet Dock Patents and thereby infringe the Jet Dock Patents.

4.      The Jet Dock Patents are adjudged valid, and a judgment of infringement is accordingly entered against Defendant ERA Marine Products, Inc. in connection with the past sales of floating docks as alleged in the Second Amended Complaint and Supplemental Complaint.

5.      Defendant ERA Marine Products, Inc. entered into a stipulation with Plaintiffs on January 21, 2009, whereby ERA Marine acknowledged that it made, used, sold, and/or offered for sale floating docks, which incorporated 100,000 units that infringed the Jet Dock Patents. The Court hereby enforces said stipulation as a discovery sanction against ERA Marine Products, Inc.  Thus, the amount of the requested default judgment is based on a stipulated sales volume of 100,000 infringing units.

6.      On account of ERA Marine's infringement, Plaintiffs lost profits in the amount of Five Million Two Hundred Nine Thousand Dollars ($5,209,000).

7.      A plaintiff is entitled to enhanced damages if the defendant willfully infringed the patent. 35 U.S.C. § 284. Enhanced damages may be awarded upon a finding of willful infringement or bad faith, which requires a showing of objective recklessness. *In re Seagate Technology, LLC*, 497 F.3d 1360, 1371 (Fed.Cir. 2007). A patentee must make a showing of objective recklessness "by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *Id.*

ERA Marine acted with full knowledge of the existence of the Jet Dock Patents and the rights of Plaintiffs and with notice to refrain from infringing Plaintiffs' patents and so acted willfully and deliberately to infringe the Jet Dock Patents.

8.      In view of the willful nature of the infringement, Plaintiffs are entitled to have their damage award against ERA Marine trebled.

9.      Plaintiffs shall recover of ERA Marine the sum of Fifteen Million Six Hundred Twenty-seven Thousand Dollars ($15,627,000) on the patent infringement claim.  This award shall be recovered jointly and severally with Sailorman, Ahern, Versadock, and Gulf Coast against whom judgment was previously awarded (Doc. 332).

10.    The awarding of attorney fees pursuant to 35 U.S.C. § 285 is an issue unique to patent law that is subject to Federal Circuit law. *Special Devices, Inc. v. OEA, Inc.*, 269 F.3d 1340, 1343 (Fed.Cir. 2001). A court may award reasonable attorney fees to prevailing parties under § 285 if it finds, by clear and convincing evidence, that the case is "exceptional." *Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1374 (Fed.Cir.2008) (citing *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1551 (Fed.Cir. 1989)). Criteria for declaring a case exceptional include willful infringement, bad faith, litigation misconduct, and unprofessional behavior. *nCube Corp. v. SeaChange Int'l, Inc.*, 436 F.3d 1317, 1319 (Fed.Cir. 2006) (citing *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1574 (Fed.Cir. 1996)).

The conduct of ERA Marine makes this case exceptional within the meaning of 35 U.S.C. § 285 and Plaintiffs are entitled to their reasonable attorney fees as the prevailing party. Plaintiffs shall, therefore, recover of ERA Marine their attorney fees.

With regard to determining the amount of attorneys' fees to be awarded, the Court will allow the prevailing party to offer evidence of fees and allow the non-prevailing party to challenge the reasonableness of those fees.

By **2:00 p.m. on April 28, 2011**, counsel for Plaintiffs shall serve and file a full and complete record of the billable time charged by the separate attorneys and law clerks for the work performed in the case at bar in prosecuting and pursuing Plaintiffs' patent infringement claims against ERA Marine. **ERA Marine shall file its response, if necessary, by 2:00 p.m. on May 4, 2011.**  The filing of any motion, other than a motion for an extension of time – if granted, will not stay the aforementioned deadlines.

At the close of this case, Plaintiffs shall serve and file a supplemental memorandum in support of their application for an award of attorneys' fees against ERA Marine.

**11.     Plaintiffs shall, within seven days of this Order, advise the Court whether and how they intend to pursue their claims against Defendant George Dabrowski.**

IT IS SO ORDERED.

 April 18, 2011                     /s/ Judge John R. Adams        
Date                                JUDGE JOHN R. ADAMS
                                  UNITED STATES DISTRICT COURT